Good morning. You may be seated. All right. This is 4-12-0617, People's State of Illinois v. Shamir Douglas. Am I saying his name correctly? All right. Let's see. Attorney Brooks is here on behalf of the state, and Attorney Bullard is here on behalf of the defendant. All right. Let's see. Ms. Bullard, are you ready to proceed? May it please the Court. Counsel. My name is Jacqueline Bullard, and I represent the defendant, Shamir Douglas, in this case. I am with the Office of the State Appellate Defender. The court inquiry in any statutory interpretation argument is discerning what the legislative intent was behind the enactment. The statute at issue in this case is a recidivism statute. It provides that when a defendant over the age of 21 is convicted of a Class I or Class II felony, having previously been convicted of a Class II or higher felony, that defendant must be sentenced as a Class X offender. The precise question before this court is, when do young defendants become subject to this sentence enhancement? This sentence enhancement is limited to defendants over the age of 21. Is eligibility for the enhancement measured at the time that the offense is committed? Or can a defendant age into eligibility at some point after the offense has been committed? In this case, Shamir Douglas was 20 years old when he committed the Class II felony to which he ultimately pleaded guilty. The sentencing range for that offense was three to seven years at the time the offense was committed. By the time Mr. Douglas pleaded guilty, however, he had turned 21. And at that point, the attorneys and the court believed that he was eligible for Class X sentencing based on an interpretation of this statute that the First District has addressed for the first time in People v. Williams and ultimately affirmed in their decision in People v. Stokes. Can I ask you a question before you go to the next question? You said the sentencing range for the Class II felony was three to seven. But wasn't he eligible for an extended term of seven to 14 years based on his prior criminal history? He could have been, yes, Your Honor. But the understanding of the parties at the time was the range was three to seven. And when the plea was negotiated, the parties all believed that the sentencing range was six to 30 based on this statute. Measuring the date of enhancement based on a defendant's age at the time of the offense is the only interpretation of this statute that is consistent with legislative intent. Behind recidivism statutes, behind really all statutes within the state of Illinois, the treatment of youth and the treatment of youthful offenders. Fair notice in preventing the arbitrary treatment of its citizens is a core value that rests at the core of every statutory, most if not all statutory enactments that take place. The prevention of arbitrary treatment is listed as an express value in the Code of Corrections by the legislature. Dozens of recidivism statutes permeate the Criminal Code and the Code of Corrections. In each of those statutes, eligibility for the sentence enhancement is triggered by the date of the offense. Despite the fact that the legislature uses a broad range of language to describe eligibility, in some of those statutes it talks about when the offense is committed.  But because of the ex post facto clause, as a necessary matter, any sentence enhancement has to be in place at the time that the offense is committed. So in every other sentence enhancement in the state, eligibility is measured by date, by offense date, not by some factor that occurs in the future. In addition, there is no other sentencing provision in the Code that creates essentially a floating eligibility date, where at the time the offense is committed, a certain sentencing range applies, but if some independent variable occurs after the time of the offense, the defendant can be eligible for enhanced punishment. These legislative values are compromised by reading the statute in the way that the First District has read it, to mean that eligibility for this enhancement can occur after the time the offense is committed. Reading the statute consistent with Williams and permitting defendants to become eligible for Class X sentencing at some point after the offense is committed creates a host of opportunities for arbitrary treatment. The timing of the charge can cause a delay between the time of the offense and the finding of guilt. Speedy trial implications, the defendant does not have a right to demand to walk into a courtroom to be tried for 120 days if he is in custody or 160 days if he has posted bond. Docketing delays can also result in extending a period of time so that a defendant can age into being 21. So you're talking about, counsel, in a situation where a defense attorney could be confronted with a dilemma, okay, you're going to turn 21 in 60 days, I really haven't had time to go over this as much as I need to, but I want to get you sentenced before you turn 21 so that you're not Class X mandatory. Yes, regardless of the strength of the state's case, regardless of whether counsel has had an opportunity to fully investigate the case. Public defender backlogs in some counties cause extraordinary delays in proceedings. In some cases, proceedings could be further delayed by fitness issues, DNA requirements, the state's right to elect which case to proceed on. The case in which the defendant is watching the clock until he turns 21 could be affected by that as well. And importantly, these delays are important for two reasons. First, that most, if not all of them, are totally outside the defendant's control. But they are also outside the control of the state players. The state, in terms of its charging decision, may be delayed by state actors that are completely unrelated to the decision of when to charge the defendant. Delays in police investigation, unavailability of witnesses. Docketing delays, while a trial court does control its own docket, that control is not without limits. The trial judge is still limited by the fact that he or she has a certain amount of cases that need to be dealt with. That some of those cases have speedy trial clocks running. And so even if the defendant, even if the trial court wanted to, and the parties agreeing to the trial court, wanted to put this defendant at the front of the line, there are constraints on other players in the system besides just the defendant. There is also the obvious notice problem to the defendant. That when the defendant commits an offense, and he is under 20, he knows what the eligible sentencing range is. At best, what this statute notifies him of is, and maybe you'll be eligible for classic sentencing. We're not sure. Can't even make a pretty good prediction at this point because of all of these other variables and factors that are outside both the defendant's and the party's control. Interpreting Section 553C8, consistent with the way that the First District has treated this, which is to measure eligibility at the date of conviction, would turn this statute into an absolute outlier as compared to every other sentencing statute in the code. What about the argument that's made in the cases that says the legislature could have intended, because of the rehab potential of a person who is 21 at the time of conviction, you know, stiffer sentencing should apply? Those rehabilitation concerns focus on the defendant that we are looking at at the time of the offense. Cutting younger offenders slack, cutting them breaks in a statute, is focused not just on rehabilitation, it is also based on culpability. It is this new juvenile justice, youthful offender case law that permeates everything that we look at. Presumably this is something that the trial court considered. Culpability in terms of the defendant's responsibility is absolutely measured at the time of the offense. Rehabilitative potential can be measured at both. Rehabilitative potential at the age the defendant commits the offense or at sentencing. But that can't be the only consideration. It could not have been reasonable for the court to say, because the defendant is older by the time of sentencing, he is no longer, somehow that line of 21 is this magical line that the defendant automatically becomes incapable of being rehabilitated. And given all of the other problems in the case, again, the legislature might have been focused on rehabilitation, but it could not have intended to create all of this potential arbitrary application. It's the necessity of looking at the statute as a whole and in the context of every other recidivism statute that exists in Illinois. And there is no indication in either Williams or Stokes that that particular part of the argument was addressed. Items that don't appear in appellate decisions don't necessarily mean that they weren't argued, but it is significant, I think, that there is no place in either of those opinions where the appellate court says, all of these other recidivism statutes apply at the time of the offense. We recognize that this interpretation creates an outlier interpretation, and we nonetheless believe that based on legislative intent, we should be measuring eligibility at the stage at which the defendant is found guilty. And in fact, the First District Court really stretched the language a bit even to get to that particular interpretation of the statute. Convicted traditionally, from a traditional standpoint, means convicted, the date on which you are found guilty, either by a jury or you plead guilty. In some context, that term means the date of sentencing, and that's exactly what the Williams Court did, what the Buree Court did in this case. It said, even though convicted sounds like it means the date on which the defendant is found guilty, we think that we need, I'm sorry, even though the term convicted is traditionally interpreted as encompassing the date of sentencing, in Buree the defendant aged into eligibility between the date on which he was found guilty and the date on which he was sentenced. And the appellate court said, under the rule of lenity, we have to assume that the legislature didn't intend to let people age into culpability. If you look at the language, I touched very briefly on the lack of linguistic precision in many recidivism statutes, primarily because it hasn't been necessary for the legislature to be that precise. But if you parse the language of Section 553C8, and you take out all of the intermediate clauses that allege the prior offenses, and you parse that sentence down to its first clause and its last clause, how it reads is, when a defendant over the age of 21 is convicted of a Class I or Class II felony, such defendant shall be sentenced as a Class X offender. This sentence focuses on sentencing. You can't be sentenced for an offense unless you're convicted of an offense. If you compare that reading of the statute and you substitute the word commits for convicts, what you get is, when a defendant over the age of 21 commits a Class I or Class II felony, such defendant shall be sentenced as a Class X offender. You cannot sentence someone who merely commits an offense as a Class X offender. There has to be a finding of guilt. And so the legislature's choice to use the word convicted in this first sentence is consistent with the fact that it's talking about when you can sentence a defendant. And you have to have a conviction in order to sentence a defendant. So the word convicted flows much better as compared to including the word committed. And then further on in the statute, when eligibility is measured, when the timeline between when the first offense is committed and the second offense is committed and the third offense is committed, at that point the legislature very clearly says,  which is again consistent with the legislature's treatment of measuring culpability of defendants. That we measure a defendant's culpability. We measure a defendant's eligibility for a particular sentence based on the offense that he committed. Not something that happened later in time, especially when that variable is affected by things outside the defendant's control and outside the control of the other players in the courtroom. There is a rich history in Illinois of courts reconstruing legislative language to mean something that it doesn't necessarily appear to mean. The word shall is mandatory. It is defined as mandatory in Webster's, in Black's Law Dictionary. Yet in this body of case law, because courts have been required to effectuate legislative intent, rather than the precise language that the legislature has used, on a rather routine basis courts have construed the word shall to mean may, even though shall doesn't mean may. But in order to get to the intent of what the legislature, what the legislative intent was behind an enactment, it's necessary for courts to do things like read the term shall for may. And indeed courts recently have inserted rather broad language into statutes to effect the legislative intent in the statute. Most recently as discussed in the defendant's brief in Johnson, the entire phrase same or similar class or greater felony was inserted into a recidivism statute to avoid absurd results. In that particular case the omission of this particular phrase would have resulted in defendants with juvenile adjudications being punished more harshly than defendants with similar class adult convictions. In Garcia the Supreme Court did the same. In that case there was a ten year limitation that told sentence enhancements. And the statute provided that the sentence enhancement was told if the defendant was in prison at the time. There was nothing in the statute that talked about whether that time should be told if the defendant skips town and willfully absents himself. But the Supreme Court looked at that statute and said the legislature intended to not reward defendants for behavior and to not give them credit for time when they're in prison when they don't have the ability to control their actions in the same way that they could when they were free. So in this instance in Garcia we have two very recent examples. Of courts reading rather broad language into statutes to affect what is the clear legislative intent in a case. In addition to the things we just discussed in terms of the ambiguities that are in the statute and the legislative intent, construing the statute in a way that the First District has chosen to do in a way that allows defendants to age into eligibility raises very serious constitutional concerns. And it goes without saying that the legislature does not intend to enact unconstitutional statutes. The fact that reading this statute in the way that the First District has read it raises serious constitutional concerns that the legislature could not have intended. Did the state ask for a PLA in Williams and Stokes in those cases? Do you know? I don't know, Your Honor. I'm happy to submit a supplemental briefing. Oh no, no, no. I was just wondering. I didn't check it myself. No, I'm not sure if they did or not. Sometimes a PLA granting or being denied means something and oftentimes it just means there are a lot of PLAs out there that the court may be interested in an issue and isn't able to address it. But no, I don't know. Ex post facto prevents increasing punishment for a crime after the time the crime is committed. There is no analogous case in terms of what this statutory scheme has created. Traditionally, ex post facto analysis is implicated when a defendant commits an offense and a new statute or statutory amendment occurs after the offense that raises the sentence. And under those circumstances, absolutely ex post facto prohibits that type of a statute. In this case, the effective date of the statute occurred long, long before Mr. Douglas committed this particular offense. But because of this floating variable that's in the statute that can change your eligibility for Class X sentencing depending on how long your trial is delayed, it does in fact increase a punishment for a defendant after the offense has been committed. Due process and equal protection, all of the arguments that are contained in the defendant's brief focus on the notions of fundamental fairness and fair treatment. These are core values that rest at the core of the Constitution and in terms of legislative enactments. And those interests are not served by interpreting the statute in a way that allows a defendant to age into very serious Class X sentencing based on a variety of factors that are outside both his control and often outside the control of the trial court and the people who are prosecuting and defending him. Does this court have any further questions? Thank you and I respect all your requests. Ms. Brooks? Hello. May it please the court and counsel, my name is Allison Paige Brooks and I represent the people in this case. First of all, with respect to the estoppel argument, I'd like to address that even though the defense really hasn't today because it's such an important point. This was a beneficial plea agreement to the defendant and it specifically negotiated the term of the plea agreement as being that the defendant was in fact eligible for Class X sentencing. So because that term was negotiated away, it violates all sense of fair play for the defendant to claim now that that term should be stricken from his plea agreement and apparently the defendant still wants to hold the state to the remainder of the bargains that the defendant negotiated as part of his plea agreement. That is the cap of 10 years, the dismissal of counts 1 and 3. Now this was a Class II felony. The defendant would have been eligible for an extended term sentence of up to 14 years and it seems part of their request for relief is resentencing to no more than 7 years in prison. Of course then it seems what the defendant wants is to also keep the state from reinstating count 1, in particular count 1,  if convicted of up to 30 years in prison. So this was a highly beneficial plea agreement and the defendant should be stopped from unilaterally repudiating an essential term of the plea agreement, that is his eligibility for Class X sentencing. So for that reason, this court should just simply refuse or decline to engage in the statutory interpretation and constitutional analysis and simply affirm sentence and judgment on the basis of this example. With respect to the statute, the statute says, quote, when a defendant, comma, over the age of 21 years, comma, is convicted. It doesn't say when the defendant becomes a defendant. The action is, is convicted. So the plain language of that means the defendant is 21 when he is convicted, not when he becomes a defendant, as the defendant suggests. So there is no ambiguity here, certainly nothing that's been accepted by any court of review since the statute became in effect in 1978. Ms. Brooks, in terms of legislative history, did Illinois borrow from another state's version of the recidivism statute in enacting this? That is, I do not know the answer to that. Are you aware of another state's treatment of comparable language? No, I don't. Sorry, Your Honor. Essentially, what we're stuck with here is analyzing the language itself, and the courts have done that in four cases in particular that would refer to the situation where a defendant commits a crime before the age of 21, and then, as the defendant puts it, ages into eligibility. The Barree case, Williams, and Stokes all relied on the analysis of that the statute is, in fact, ambiguous, but the conclusion is that it refers to the date at which the defendant was adjudicated guilty of their crime rather than the date at which they were sentenced. And the Holmes case, however, found no ambiguity, except that the word convicted has to refer to the date the sentence is imposed, because that's the state's position here, especially with respect to the constitutional arguments with equal protection, that this is not an ambiguous statute. It refers to the date of sentencing. That's when the eligibility is determined. The defendant is already 21 at the time of sentencing, therefore he is, in fact, eligible and must be sentenced mandatorily as a class X offender. So that does get to the equal protection, the rationality of this, as pertaining to rehabilitative potential, and rehabilitative potential is a question that is usually assessed as of the time of sentencing. So if the defendant commits additional crimes, for example, prior to sentencing, that's something that the judge can take into consideration in weighing his rehabilitative potential. Counsel, what about the notice issue? I mean, counsel has talked about this floating variable here. What about that? How do we address that? Well, to move into the constitutional argument for the moment to answer your question, notice is essentially, they're not saying that this doesn't give them fair notice, that if they turn 21 before they're convicted, that they will be sentenced as a class X offender. That's notice. The defendant had that notice, because that's what the statute says. What the defendant believes is somehow he's entitled to know what, as of the moment he commits his offense, he's entitled to know the exact consequences that are going to apply. Well, we have ranges of sentences, so you don't really get actual notice of what your sentence is going to be the moment you commit an offense, because the judge is going to fix that out of a range. The other thing is a case like Carrillo, where the defendant doesn't actually kill someone until many years after they commit some act that injures somebody, and nine years later they die. Then they're later charged and convicted of murder. Well, they have fair notice that they were going to be charged with and convicted and sentenced for murder the moment they committed their crime, which didn't happen until many years later. It doesn't seem that the defendant's sense of what he believes fair notice is complies with what the law is. Another case I think was an example where there was no statutory minimum for a crime, and that was still held to give the defendant fair notice of the penalty that attached to his criminal conduct. What about the ex post facto argument, that there's an event taking place after the commission of the crime that elevates the penalty? Again, Your Honor, the defendant's sense of what constitutes an ex post facto violation doesn't comport with the law in the sense that an ex post facto violation requires that there be some sort of legislative change, so that an event has to occur prior to the enactment to constitute the effective date of the enactment to constitute an ex post facto violation. So the defendant commits a crime, then the law changes, for example, and a new public act takes effect, and then the defendant applied that new law, then if it increased the punishment, would constitute an ex post facto violation. But this language has been in effect since 1978, and the defendant commits a crime well after that. So there's no legislative change, and I think what the defendant is trying to creatively come up with is the notion of somehow there's a shifting or second effective date. Well, the law took effect in 1978. There is no new effective date of that law. That law has always been in effect since then, and there's no legislative change. What the defendant is talking about is something other than a legislative change, a change in the law, a change in facts, a fact that he aged into age 21 before his date of sentencing. So that does not implicate ex post facto, because there's no legislative change. Do you have a problem with the fact that a prosecutor who has the control over when a charge gets filed, you have a person who commits an offense, say, six months before they turn 21. You've got a three-year statute of limitations. The state's attorney could wait until that person turns 21 to charge them and convict them. Correct, Your Honor, and essentially all the other claims about the burdens of dockets and overburdened public defenders, the defendant doesn't have a right to be charged. So you're correct, Your Honor, in the sense that all the ideas about docketing and burdens and delays, once the case gets into the court system, is kind of irrelevant because the prosecutor doesn't even have to charge it until after the defendant becomes 21. The defendant has no right to essentially order the prosecutor to charge him with a crime earlier than the prosecutor chooses to do so, and the defense-only protection is the statute of limitations. Well, that might be, but you're right. But you still have a prosecutor controlling, under your theory, whether a defendant is eligible for class X sentencing or not, based on when he or she files the charges. Correct, Your Honor, and the only way that could really matter is if the defendant meets their burden of proving, rebutting the presumption of constitutionality and showing that somehow constitutes a violation of the Constitution in the state or in the United States. Well, you could have two defendants, both the same age, committing the same offense on the same date, maybe in different counties, maybe in the same county, and the prosecutor has the authority to decide, I'm going to charge this guy and get him through the system before he turns 21, but this guy, I'm going to charge him after he turns 21, and he's going to suffer class X sentencing, but this guy won't. You don't see a problem with that? Well, it would be the defendant's burden to show that that violates equal protection, and to show that people who are in similar classes should have been classified the same, essentially. But the legislative classification here is based on the age of the defendant at the time of sentencing. So, essentially, the defense argument would say that the defendant would have the burden of showing that that's irrational, but the legislature... But what's rational about the example I gave you? The rationality is that the legislature is entitled to say that as a matter of legislative grace, that they think that the presumption of what they said, great rehabilitative potential, should apply to defendants who are 21 when they're sentenced. And that is the presumption the legislature wrote into the statute. So the defense is trying to take advantage of that presumption when it doesn't, by its own terms, apply to him. So, essentially, the other aspect of that argument, is the defendant makes reliance on, is that the legislature could not have intended that sort of situation to give prosecutors the keys to the classification of the crime. But then again, it gets back to the question of what is the clear legislative intent here? In order to rewrite the statute, as the defendant suggests, in order to correct what the defendant terms here as a legislative oversight. Now, the state does not admit that this is a legislative oversight. That's the defendant's argument. But even if that were accepted, that this is a legislative oversight, the defendant then would have the burden of persuading that the intent of the legislature is otherwise clear. In the cases that he cites in Garcia and Johnson, that was found to be the case. However, this is a different situation. What the defendant is saying, in order to read the statute as when a defendant has committed a Class I or Class II offense, not is convicted, in order to reword that statute, the legislative intent they're drawing on is citations to other statutes that they believe show recidivism statutes, they show the legislature treating this issue differently. But that doesn't mean that in this context, that's what the legislature intended to do as well, because the legislature wrote this statute differently. And they used different words for a different reason. And that should be the presumption. Not that somehow they really meant something else, but they didn't say it. But how else can we figure that out? The defendant says, well, look at all these other statutes. But there's only one, I think, statute in the Uniform Code of Corrections that is a recidivism statute based on age that is sort of similar, but it uses different wording. So that's not really a conclusive legislative intent, just a clear enough legislative intent for this court to engage in the very powerful task of rewriting a legislature statute, something that under separation of powers, this court should be very wary of engaging in. And the fact that no other appellate court has adopted this argument since the statute took effect in 1978 should also give this court pause before accepting the defendant's request to rewrite the statute, consistent essentially with what the defendant believes is the defendant's sense of public policy. And even if it were this court's sense of public policy, the law is that this court cannot rewrite statutes to be consistent with its own sense of public policy, but must follow statutes as written unless, of course, the intent of the legislature was otherwise clear. So for those reasons, the statute is in fact constitutional, and the defendant has not shown a reason for interpreting it in a manner other than its language permits. So the other argument the state has is with respect to the requested remand with directions for the defendant to, quote, withdraw a letter and provide notice to the Department of Corrections with respect to the issue of revocation of the defendant's sentence credit. This was a case where it was the defendant's first post-conviction petition, so the statute dealing with frivolous lawsuits would not have applied to him. However, what the defendant is asking for is exercise of supervisory authority that this court does not possess. Essentially, to, quote, withdraw a letter, send a letter, what really the defendant wants is this court to order the trial court to then provide a new letter to the Department of Corrections saying, disregard that last letter. The defendant is not actually eligible to have his sentence credit revoked as a result of filing his first post-conviction petition. Essentially, there's no Rule 615 basis for that exercise of supervisory authority, and the cases cited with respect to vacating actions of the circuit clerk are not applicable to this. It's not simply vacating the order. What the defendant wants is this court to order the judge to send a new letter, and there seems to be, the defendant has some sort of burden of providing a jurisdictional basis for this court to engage in that activity of ordering the judge to send a new letter to DOC. So for the reasons stated, if this court has no further questions, I request you to affirm and thank you. Thank you, Ms. Brooks. Ms. Ballard, do you have a rebuttal? I'd like to address the requested remedy. In the original brief, I requested that the cause be remanded for resentencing, citing two cases that involved trials rather than guilty pleas. The state correctly argues that if it wants to, as a remedy, have the entire plea withdrawn and start from square one, the state has the ability to do that. And so the defendant is perfectly satisfied with having the case sent back, having the guilty plea vacated, and starting from square one. Starting from square one at a point where, when the defendant is negotiating a plea agreement, both his attorney and the state understand what the true sentencing guidelines are, which this addresses a little bit of the state's estoppel argument. The defendant did not, in fact, get a bargain. He got a sentence that was longer than the sentence that was authorized by statute. He was eligible for extended term, but eligible for extended term does not mean that the trial court would have imposed an extended term. It also, the fact, because the parties believed that the defendant had to be sentenced within the six to 30 year range, there was no consideration of extended term, there was no negotiation about whether extended term would or wouldn't apply. And fundamentally, the trial court was hampered in its ability to sentence the defendant because the trial court believed that the correct sentencing range was six to 30 years and placed its sentence within that range, subject to the agreed cap. As to the ex post facto argument, it is true that all other ex post facto cases have involved actual legislative enactments that occurred after the offense was committed. But the U.S. Supreme Court in Miller reminds us that the constitutional prohibition against ex post facto laws cannot be avoided merely by adding to a law notice that it might be changed. And this is exactly what Section 553C8 tells defendants. Your sentencing range is the normal range for a Class I or a Class II offense, but it might change in the future. Does the court have any further questions? No. Thank you. We'll take this matter under advisement and be in recess until the next case.